UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| MARQUAYLE MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:15-cv-274-WCL-SLC |
| | ) | |
| CITY OF FORT WAYNE, | ) | |
| FORT WAYNE CITY POLICE OFFICER | ) | |
| BARRY PRUSER, #1820F, | ) | |
| FORT WAYNE CITY POLICE OFFICER | ) | |
| MICHAEL LONG, #1859F | ) | |
| FORT WAYNE CITY POLICE OFFICER | ) | |
| MARTIN P. GROOMS, | ) | |
| FORT WAYNE CITY POLICE OFFICER | ) | |
| DERRICK DEMOREST, and | ) | |
| FORT WAYNE CITY POLICE OFFICER | ) | |
| TODD HUGHES, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT**

**I.  INTRODUCTION**

On June 24, 2014, Plaintiff MarQuayle Martin (Martin)[1] was pulled over while driving his vehicle by the defendant officers and subsequently arrested. Martin's five year-old daughter, along with two adult licensed drivers were in Martin's vehicle, both of whom were related to Martin and neither of whom had engaged in any illegal activity, yet the defendant Officers made the remarkable and inexplicable decision to tow Martin's car over the objections of Martin and his licensed passengers, and in contravention of Seventh Circuit law. *See United States v. Duguay*, 93 F.3d 346 (7th Cir. 1996).  Martin asserts that the Defendants' decision to tow his

---

[1] Plaintiff MarQuayle Martin has brought a class action lawsuit entitled MarQuayle Martin v. City of Fort Wayne, Cause No. 1:15-cv-384-TLS-SLC, referencing the same facts and law inherent in this case.  The Court (Judge Springman) is considering Defendant City of Fort Wayne's Motion to Deny Class Certification and Plaintiff's objections thereto.

vehicle was in violation of Martin's federally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution. For the reasons set forth below, pursuant to Federal Rules of Civil Procedure 56 and Local Rule 56-1, there are no material facts in dispute and Martin is entitled to judgment as a matter of law on his claims that his Fourth and Fourteenth Amendment rights were violated as a result of the unconstitutional and illegal towing and impoundment of his vehicle.[2]

## II.   STATEMENT OF MATERIAL FACTS

For the purposes of this Motion only, the Plaintiff sets forth the following relevant undisputed facts:

On June 24, 2014, Plaintiff MarQuayle Martin was pulled over while driving, and was arrested for alleged "aggressive driving." (Ex.F, Indiana Complaint Information and Summons). At the time of the incident Plaintiff was gainfully employed and a full-time college student. (Ex.I, Pl. Dep., p. 4-5). Plaintiff had a valid driver's license at the time of the stop. (Ex.J, Pl. Aff., ¶ 4). Riding in the vehicle with Plaintiff were three other adults, two of whom had valid driver's licenses, as well as Plaintiff's five year-old daughter. (Ex.I, Pl. Deposition, p.58; Ex. J, Pl. Aff., ¶5). All three adult passengers were handcuffed after being ordered out of the vehicle one at a time at gun point. (Ex.K, Je'Carri Martin Aff., ¶5). The two female passengers, Je'Carri Martin and Taylor Carswell were both uncuffed after their identities were verified, and it was determined that they were not a threat. (Ex.B, Long Aff., p.2).

After the Defendant officers effectuated Plaintiff's arrest, Defendant Demorest spoke

---

[2] Defendants filed a motion for summary judgment with this Court on March 21, 2016, to which Plaintiff filed his response on April 1, 2016, and in turn Defendants filed their sur-reply on May 9, 2016, all of which are still under the consideration of this Court. Plaintiff brings this current motion in accordance with Fed. R. Civ. P. 56(a), and in a timely fashion, to address only the issues of the improper search, seizure, tow, and impoundment of Plaintiff's vehicle, all in violation of Plaintiff's Fourth and Fourteenth Amendment rights, resulting from the Defendant's actions which were in direct violation of the holding in *Duguay*. Defendants admit in their motion for summary judgment that there are no genuine issues of material fact, and so Plaintiff now contends in this motion that there are no genuine issues of material fact and he is entitled to summary judgment as a matter of law as to these allegations.

2

with passenger Je'Carri Martin, and verified with dispatch that her driver's license was valid. (Ex.E, Def. Demorest In-Dash Video, at 10:03). Ms. Martin confirmed that not only did she have a valid driver's license, but that she was willing to drive Plaintiff's vehicle away from the scene. (*Id.*). Defendant Demorest not only verified that Ms. Martin had a valid driver's license, but also communicated that information to other officers at the scene, stating "She's got a valid 'L'". (Ex.E, Def. Demorest In-Car Video, at 13:45).

Defendant Officers discussed amongst themselves what the appropriate charges would be as against the Plaintiff. (*Id.*, at 13:47 ). Defendant Long can he heard on his in-car video stating "right now I'm only concerned with the driver. He's the one that was driving the way he was." (Ex. D, Def. Long In-Car Video, at 20:37). After agreeing that Plaintiff would be charged with "aggressive driving," Defendant Long made the decision to tow and impound the Plaintiff's vehicle. (Ex.C, Def. Long Aff., ¶30). Defendant Long's reasoning for towing the vehicle was that he feared that the "aggressive driving could have resumed," even though Plaintiff had already been arrested. (*Id.*).

Plaintiff expressed several times during his detention at the scene that he wished to have Ms. Martin take possession of the vehicle. (Ex.J, Pl. Aff., ¶7; Ex. K, Je'Carri Martin Aff., ¶10). Plaintiff authorized the Defendant Officers to give his set of keys to Ms. Martin. (Ex.J, Pl. Aff., ¶7, Ex. B, Def. Long Narrative, p.2; Ex. D, Def. Long In-Car Video, at 42:22). Nearly thirty minutes after the initial traffic stop began, when the Defendant Officers notified Plaintiff of their intention to tow the vehicle, Plaintiff protested, saying repeatedly "you have licensed drivers right there!" referring to Ms. Martin and Ms. Carswell. (Ex.D, Def. Long In-Dash Video, at 28:46). Ms. Martin and Ms. Carswell joined in the protest. (*Id.*). At no time did the Plaintiff give the Defendants permission to have his vehicle towed. (Ex.I, Pl. Deposition, p.58).

After the Defendants made the decision to tow Plaintiff's vehicle, the Defendants proceeded to search and inventory the contents of the vehicle. (Ex.B, Def. Long Narrative, p.2; Ex. C, Def. Long Aff., ¶28; Ex. N, Tow and Inventory Form; Ex. D, Def. Long In-Car Video, at 32:36-42:00). Officers found blankets, a hula hoop, a baby bath, and other innocuous items, but no contraband of any kind was found. (Ex. N, Tow and Inventory Form; Ex. K, Jecarri Martin Aff., ¶6; Ex. B, Def. Long Narrative, p.2). Defendant officers contacted Kelley Wrecker Service and requested a tow truck be sent to tow away Plaintiff's car. (Ex.O, Parker Service Tow Receipt). Defendant Demorest signed the tow and inventory form. (Ex.N, Tow and Inventory Form). After the tow truck arrived and removed Plaintiff's vehicle from the drive, the Defendant Officers left as well. (Ex.D, Def. Long In-Car Video, at 50:11).

Ms. Martin, Ms. Carswell, and the five year-old little girl were left standing on the side of the road, holding a car seat and desperately making phone calls trying to find a ride, as the Defendant Officers departed the scene. (Ex.K, Jecarri Martin Aff., ¶¶14-15).

### III. LEGAL ARGUMENT

#### A. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and must identify the materials listed in Rule 56(c) that "demonstrate the absence of a genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant satisfies the requirements of Rule 56(a), the burden then shifts to the nonmoving party to "produce evidence that would support a jury verdict." *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986).

The nonmoving party may not rest upon unsupported defenses, but must "show that there is evidence upon which a reasonable jury could find for him; that requirement is not met by producing a "mere scintilla" of evidence." *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677 (citing *Anderson* at 252).  Further, "[i]t is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th. Cir.2008).  It is well known to this Court that "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson* 477 U.S. at 255.

Finally, it is axiomatic that a plaintiff's motion for summary judgment should be regarded by the Court no differently than a defendant's motion for summary judgment. The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action'." *Celotex* at 327.  "One of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [ ] it should be interpreted in a way that allows it to accomplish this purpose." *Id.* at 323-24.

      B.      **OFFICERS OF THE LAW ARE PRESUMED TO KNOW THE LAW OF THE JURISDICTION THE OFFICERS ARE ENFORCING.**

When evaluating the legality of police officers' actions against the correct interpretation of the law, the standard is consistent with that to which ordinary citizens are held.  Fundamental to the administration of law is "the background assumption that every citizen knows the law . . ." *Bryan v. United States*, 524 U.S. 184, 193 (1998).  In accordance with this assumption, "the traditional rule" is that "ignorance of the law is no excuse." *Id.* at 196.  As famously stated by Oliver W. Holmes, Jr., "[i]t is desirable that the burden of all be equal . . ." and to allow a

5

defense of ignorance of the law "would be to encourage ignorance where the law-maker has determined to make men know and obey . . .". Oliver W. Holmes, Jr., The Common Law 46 (1881). It would be fundamentally unfair to hold citizens to this maxim yet allow those entrusted to enforce the law to escape liability by claiming to be ignorant of it. Therefore, on June 24, 2014, all Defendants were presumed to have known the law. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). This presumption imputes awareness of the law for the purpose of imposing legal responsibility. *See United States v. Debruhl*, 993 A.2d 571, 577 n. 33 (D.C. 2010).

      **C.    ON JUNE 24, 2014, CONTROLLING LAW IN THE SEVENTH CIRCUIT DID NOT ALLOW AN OFFICER TO INDISCRIMINATELY SEARCH AND TOW A VEHICLE INCIDENT TO ARREST.**

Warrantless searches are per se unreasonable under the Fourth Amendment unless they fall into the category of well-established exceptions. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). One of these exceptions is the automobile exception. *United States v. Ross*, 456 U.S. 798 (1982). However, this automobile exception only allows an officer to search a vehicle where there is probable cause of criminal activity. *Gant*, 556 U.S. at 347. Probable cause exists where "a reasonably prudent person would believe that contraband or evidence of a crime will be found in the place to be searched." *United States v. Edwards*, 769 F.3d 509, 514 (7th Cir. 2014) (internal quotation marks omitted).

An exception to the requirement of probable cause for an automobile search is the inventory search. *United States v. Wilson*, 938 F.2d 785, 788 (7th Cir. 1991). Inventory searches of the contents of a vehicle are permitted when a vehicle is lawfully taken into custody as part of an officer's "community caretaking" function. *South Dakota v. Opperman*, 428 U.S. 364, 368-69 (1976); *United States. v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005).

However, for an inventory search to be lawful, the seizure of a vehicle itself must be lawful. The Seventh Circuit Court of Appeals directly addressed the question of whether it was lawful for an officer to seize a vehicle where a licensed driver was present and ready to drive the vehicle in lieu of seizure, towing, and impoundment. *Duguay*, 93 F.3d at 351-353.  The Court found that such a seizure was not lawful and that a vehicle search, tow, and impoundment under these circumstances was unreasonable. *Id*.

As the Circuit Court wrote, "The policy of impounding the car without regard to whether the defendant can provide for its removal is patently unreasonable if the ostensible purpose for impoundment is for the 'caretaking' of the streets . . . . [I]f the purpose of impoundment is not investigative, and in the absence of probable cause, we do not see what purpose denying possession of the car to a passenger, a girlfriend, or a family member could possibly serve." *Id*. Further, "The suggestion that the police were obliged to impound the vehicle 'to protect it' from theft or vandalism, strikes us as making up new police obligations after the fact where none existed before. The police do not owe a duty to the general public to remove vulnerable automobiles from high-crime neighborhoods." *Id*. at 353.

Defendants contend that *Colorado v. Bertine*, 479 U.S. 367 (1987), provided the Defendants discretion to indiscriminately tow a vehicle when the United States Supreme Court held that the reasonableness of impounding a vehicle "does not necessarily or invariably turn on the existence of alternative less intrusive means." 479 U.S. 374.  Def.s' Memorandum in Support of Motion for Summary Judgment, Dkt. #27, pp.16-7.  However, *Duguay* narrows this holding by expressly prohibiting impoundment when specific conditions arise, i.e. conditions identical to those in the case at bar.

Presently, Defendants acknowledge that they searched, seized, and had Plaintiff's vehicle

towed and impounded without stating any independent probable cause or investigatory reason to search and seize the vehicle.  *See* Sec. II, *supra.*  Defendant Long states that he searched Plaintiff's vehicle and that he had Plaintiff's vehicle towed, and Defendant Demorest acknowledges he signed the tow and inventory form for the vehicle.  *Id*.  Defendant Long claims the tow was proper due to the concern that "aggressive driving could have resumed had Mr. Martin's vehicle been driven from the scene. "  (Ex. C, Def. Long Aff., ¶30; Brief in Support of Def.s' Motion for Summary Judgment, Dkt. #27, p.17).  However, the Seventh Circuit in *Duguay* found this purported concern for the safety of private property and the general public to be unavailing.  Defendants had no probable cause to search the vehicle other than an inventory search.  Furthermore, Defendants have never provided any evidence supporting the existence of probable cause.  Finally, regardless of whether the search was proper, the subsequent decision to tow and impound was not in light of *Duguay*.

Defendants contend that their acts of summarily searching, seizing, and impounding Plaintiff's vehicle did not violate his rights to Due Process under the Fourteenth Amendment to the U.S. Constitution, because Defendant Officers had to act quickly and post-deprivation remedies were available to Plaintiff.  (Ex.G, Brief in Support of Def.s' Motion for Summary Judgment, Dkt. #27, p.18).  However, as stated, Defendants did not have to act quickly to seize and impound Plaintiff's vehicle.  Rather, they should not have acted to impound the vehicle at all, quickly or otherwise, as the seizure was contrary to established law.

Therefore, summary judgment should be granted on his claims of unlawful search and seizure in violation of his Fourth and Fourteenth Amendment rights.

D. **DEFENDANTS CANNOT RELY ON THE FORT WAYNE POLICE**

**DEPARTMENT'S MOTOR VEHICLE TOW AND INVENTORY POLICY IN EFFECT ON JUNE 24, 2014 (AND CURRENTLY STILL IN EFFECT) AS A DEFENSE TO THEIR UNCONSTITUTIONAL ACTIONS.**

Defendants' rely heavily on the fact that the Fort Wayne Police Department has a written policy that grants wide discretion when towing a vehicle incident to arrest. The policy states, amongst other things:

> I.   **Purpose**
>
> The purpose of this policy is to provide officers with guidelines for the tow and inventory of motor vehicles. A motor vehicle tow and inventory is proper and warranted when part of a routine administrative caretaking function authorized by the department.
>
> II.   **Policy**
>
> It is the policy of this department to tow, inventory and impound motor vehicles whenever it is reasonably necessary to safeguard the vehicle and its contents, to facilitate public safety or to lawfully seize the vehicle and its contents for evidentiary purposes.
>
> III.   **Procedures**
>
> A.  <u>Legal Authority to Inventory Motor Vehicles</u>
>
>   1. A sworn member of the Fort Wayne Police Department shall conduct a motor vehicle inventory without a warrant and probable cause when:
>
>      a. The vehicle has been lawfully seized or impounded pursuant to the arrest of the driver.

(Ex. A, Fort Wayne Police Department Motor vehicle Tow and Inventory Policy, p. 1).

Defendants contend that the above policy provisions granted them full authority to search and tow Plaintiff's vehicle. However, mere words on a paper do not control established Seventh Circuit law. The Defendants cannot point to an unconstitutional policy and claim exoneration for their actions. "The existence of a police policy, city ordinance, or state law alone does not render a particular search or seizure reasonable or otherwise immune from scrutiny under the Fourth Amendment." *United States v. Cartwright,* 630 F.3d 610, 614 (7th Cir. 2010). Ultimately

the question is not whether the search or seizure was authorized by state law, but rather whether the search or seizure was reasonable under the Fourth Amendment. *Id.* Officers of the law do not get the option to search, tow, and impound a vehicle without a legitimate rationale for doing so. *Duguay* at 352. "Impoundment based solely on an arrestee's status as a driver, owner, or passenger is irrational and inconsistent with "caretaking" functions. *Id.* Caretaking functions, as described by the Circuit Court, include "removing disabled or damaged vehicles, and automobiles which violate parking ordinances, and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic." *Id.* (internal quotations and citations omitted). Further, "[t]he decision to impound an automobile, unless it is supported by probable cause of criminal activity, is only valid if the arrestee is otherwise unable to provide for the speedy removal of the car from public thoroughfares or parking lots." *Id.* At 353. Simply stated, unless the vehicle contains (or itself is) evidence of a crime, it cannot, by law, be towed if there is another driver present and/or available to drive the vehicle away.

      The policy relied upon by the Defendants fails to incorporate the full holding in *Duguay*. Nowhere in the policy does it state that towing the vehicle is not permitted when another driver is available. Such automatic towing and seizure violates the vehicle owner's constitutional rights. Defendants cannot rely on the silence of a defetive policy as a defense to their actions. Again, officers of the law are presumed to know the law of the jurisdiction the officers are enforcing. There is nothing unclear about *Duguay*, and nearly twenty years has passed since the holding in *Duguay* has been rendered, making any claim of mistake of law by the Defendants patently unreasonable and somewhat disingenuous. Ft.Wayne's policy needs updated. Its officers need to be better trained. The point is that the outdated policy, in violation of *Duguay*, does not provide the City a safety net.

In addition, Defendants have yet to identify any legitimate "caretaking function" that was served by towing the Plaintiff's vehicle. Defendants did, however, set forth the belated reasoning that "Officer Long was also concerned that the aggressive driving could resume once Martin's vehicle was back on the road . . .". (Ex. C, Def. Long Aff., ¶30; Ex.G, Brief in Support of Def.s' Motion for Summary Judgment, Dkt. #27, p.17). Plaintiff contends that this reasoning does not approach a "caretaking function," as the vehicle itself could not possible drive aggressively unless an aggressive driver was behind the wheel—and in this situation, the aggressive driver, the Plaintiff, was already under arrest. Perhaps Officer Long and the other Defendants once enjoyed watching episodes of "Knight Rider," or fancied the movie "Christine," but asserting the "concern" that a vehicle will continue to drive aggressively when the aggressive driver is no longer behind the wheel is not a valid lawful reason to tow a car.[3] No reasonable officer would believe such an absurd assertion.

Finally, Defendants acknowledge that *two* licensed drivers were present and capable to drive, and have set forth absolutely no evidence that either licensed driver had any inclination to drive aggressively. (Ex.E, Def. Demorest In-Car Video, at 10:03 and 13:45; Ex. D, Def. Long In-Car Video at 20:37 ("right now I'm only concerned with the driver. He's the one that was driving the way he was.")). The two licensed drivers had committed no crime, and the Defendants had no issue with leaving them to care for the Plaintiff's five year-old daughter in lieu of calling Social Services; yet, inexplicably, the Defendants decided that they could not responsibly drive a car to get themselves and the child to a safe place. The Defendants left two women and a child standing on the side of the road, desperately calling friends and family in an attempt to secure a ride to safety. To claim that this action was a "caretaking function" flies in

---

[3] Both "Knight Rider" and "Christine" depict vehicles with minds of their own and the capability to operate in any fashion they please regardless of the driver's maneuvering of the vehicle. To assert that a vehicle can perform this action of Hollywood fiction does not translate well into the law, as it is an absolute impossibility.

the face of common sense. Nor was the towing, inventory, and impoundment of Plaintiff's car reasonably necessary to protect the car or its contents (a licensed driver was available to take the car), to facilitate public safety (the licensed drivers and the five year-old were no threat to the public, and could have immediately removed the vehicle), or required for evidentiary purposes.

As the Defendants have failed to set forth any constitutionally legitimate rationale for the search, tow, and impoundment of Plaintiff's vehicle, and as there are no genuine issues of material fact regarding the circumstances of same, this Court must apply *Duguay* and find that Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure and Fourteenth Amendment right to due process have been violated, thus warranting the granting of summary judgment on these claims.

### E.  DEFENDANT LONG'S BELATED REASONING FOR TOWING PLAINTIFF'S CAR WAS CREATED IN AN ATTEMPT TO MANIPULATE THE DEFENSE'S POSITION TO FIT THE LAW.

Not only does Defendant Long's new reasoning fail to rise to the standard of a caretaking function, it is noteworthy that this new reason did not come to light until Defendant Long found himself on the other end of a lawsuit. Defendant Long's Supplemental Narrative (Ex.B), penned on June 27, 2014, makes absolutely no mention of the reason for towing Plaintiff's car; Defendant Long's Affidavit, penned on March 14, 2016, which very closely mirror's Long's Supplemental Narrative, deviates from the script in paragraph 30. (Ex.C, Def. Long Aff., ¶30). This is the first time Long asserts any reason for the decision he made to tow Plaintiff's vehicle. The gratuitous embellishment comes nearly *two years* after the incident in question, and appears to be inserted in an attempt to satisfy *Duguay*, when *Duguay* could not otherwise be satisfied. Inventing facts to fit the law or creating facts to avoid controlling precedent is so disingenuous that it approaches a fraud upon the Court. Plaintiff additionally contends that Defendant Long's

12

belated reasoning for towing Plaintiff's car is a blatant contradiction to Officer Long's stated position the day of the incident in question concerning Long's belief of the intent of the other drivers.  Officer Long's in-dash camera captured Long stating "Right now I'm only concerned with the driver.  He's the one that was driving the way he was."  (Ex.D, Def. Officer Long In-Car Video, at 20:37).  For Defendant Long to now claim he believed that the aggressive driving would continue is a lie, and should not be believed by the Court.

Even if the Court is inclined to give weight to Long's very belated reasoning, it is irrelevant, as the relevant inquiry here is reasonableness.  The facts must be judged against an objective standard, and a reasonable officer is not permitted to act only on a "hunch," but must draw on specific reasonable inferences based upon the facts and his experience.  *Terry v. Ohio*, 392 U.S. 1, 27 (1968).   Subjective beliefs of the officers do not count.

Here, Defendant Long has set forth no evidence that there was any reasonable inference that the two female passengers were a threat to anybody, or had any intention of driving the Plaintiff's car aggressively.   His belated and unbelievable reasoning for towing Plaintiff's car does not provide legal justification for his actions.

### F.  THE DEFENDANTS CANNOT CLAIM QUALIFIED IMMUNITY AS A DEFENSE TO THEIR UNCONSTITUTIONAL ACTIONS BECAUSE THEY VIOLATED THE PLAINTIFF'S CLEARLY ESTABLISHED RIGHTS.

Defendants are not entitled to qualified immunity for their violations of Plaintiff's clearly established rights.

Qualified immunity is an affirmative defense and may be defeated where a defendant violated the established constitutional rights of a plaintiff.  *See Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Payne*, 337 F.3d at 775.  Therefore, a defendant may only sustain its affirmative defense where it is shown that the alleged violation was not clearly established at the time of the

purported misconduct. This is a question of law. *Marshall v. Allen*, 984 F.2d 787, 793 (7th Cir. 1993). To show a right is clearly established, a plaintiff may point to an analogous case or show that no reasonable person would believe that the conduct did not violate the plaintiff's constitutional rights. *Beaman v. Freesmeyer*, 776 F.3d 500, 508-09 (7th Cir. 2015).

When evaluating Plaintiff's claims of unlawful search and seizure of his vehicle, it is beyond dispute that under the Seventh Circuit's *Duguay* standard, set down in 1996, Defendant Officers' search, seizure, tow, and impound Plaintiff's vehicle was unconstitutional. *See* Sec. III(C), *supra*. At the risk of being redundant, Plaintiff again contends that officers of the law are presumed to know the law of the jurisdiction they are enforcing. *See* Sec.III(B), *supra*. The Defendants had fair and clear warning that their actions were unconstitutional (*Duguay* had been controlling for eighteen years); further, as all citizens are presumed to know the law, no reasonable person would believe that their conduct did not violate Plaintiff's constitutional rights.

Therefore, Defendant Officers are not entitled to qualified immunity and Plaintiff is entitled, as a matter of law, to summary judgment.

## IV.   CONCLUSION

For the reasons stated above, Plaintiff MarQuayle Martin prays that the Court will grant his Motion for Summary Judgment as against all Defendants. This matter should go to trial only on the issue of damages.

        Respectfully,

        **CHRISTOPHER C. MYERS & ASSOCIATES**

        /s/ Christopher C. Myers
        Christopher C. Myers, #1043-02
        809 South Calhoun Street, Suite 400
        Fort Wayne, IN 46802-2307
        Telephone: (260) 424-0600
        Facsimile: (260) 424-0712
        Attorney for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby swears and affirms that a true and correct copy of the above was served electronically, or by some other method approved by this Court, on this 19th day of July, 2016, addressed to:

Carolyn M. Trier
Trier Law Office
P.O. Box 5528
Fort Wayne, IN 46895

        /s/ Christopher C. Myers