UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| MARQUAYLE MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  1:15-cv-274 |
| | ) | |
| CITY OF FORT WAYNE, | ) | |
| FORT WAYNE POLICE OFFICER | ) | |
| BARRY PRUSER, #1802F, | ) | |
| FORT WAYNE POLICE OFFICER | ) | |
| MICHAEL LONG, #1859F, | ) | |
| FORT WAYNE POLICE OFFICER | ) | |
| MARTIN P. GROOMS, | ) | |
| FORT WAYNE POLICE OFFICER | ) | |
| DERRICK DEMOREST, and | ) | |
| FORT WAYNE POLICE OFFICER | ) | |
| TODD HUGHES, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The City of Fort Wayne and Fort Wayne Police Officers Barry Pruser, Michael Long, Martin P. Grooms, Derrick Demorest, and Todd Hughes state in opposition to Plaintiff's Motion for Summary Judgment as follows:

The defendants dispute statements made in the plaintiff's "Statement of Material Facts". For example, the plaintiff claims, "Ms. Martin confirmed that not only did she have a valid driver's license, but that she was willing to drive Plaintiff's vehicle away from the scene." (Plaintiff's brief, p.3). However, in Officer Demorest's in-car video, Ms. Martin does not state that she is willing to drive the plaintiff's vehicle away from the scene. Further, Officer Demorest was doing a routine check of each passenger's name to check for warrants, identification, and a

valid driver's license when he was speaking with Ms Martin. (Officer Demorest's Answers to Plaintiff's First Set of Interrogatories, No. 10). Officer Demorest was not involved in the decision to tow the plaintiff's vehicle. (*Id.*, No. 12).

Mr. Martin did not authorize any of the defendant officers to give his <u>car</u> keys to Ms. Martin. Officer Long's narrative states, "Mr. Martin also allowed me to give Ms. Martin the <u>remaining</u> keys on his key ring." (Officer Long's narrative report previously designated in the defendants' motion for summary judgment as Defendants' Exhibit B1, Doc 26-2, p. 7). Officer Long's in-car video recorded the conversation about the keys, and that conversation was about house keys, not keys to Mr. Martin's vehicle. (Long in-car video at 42:00, previously designated in the defendants' motion for summary judgment as Defendants' Exhibit H, Doc 25). Ms. Martin also states in her affidavit that she was not given the car keys. (Je'Carri Martin aff., para. 11).

Officer Long made the decision to tow the plaintiff's vehicle. Mr. Martin's vehicle was involved in the offense of aggressive driving. (Long aff., para. 30, previously designated in the defendants' motion for summary judgment as Defendants' Exhibit B, Doc 26-2). The other vehicle involved in the aggressive driving had not been stopped. (*Id.*). Based on Officer Long's knowledge, training, and experience as a police officer, he knows that dangerous aggressive driving situations like the one he observed Mr. Martin participating in can cause accidents or evolve into more dangerous situations, including shootings. (*Id.*, para. 11). Officer Demorest also can be heard on his in-car video talking about how dangerous aggressive driving situations can be and that they often result in shootings. (Demorest in-car video at 9:32, Plaintiff's Exhibit E).

Finally, Officer Long offered Mr. Martin's passengers a ride to a safe place where they could wait for someone to pick them up. (Long aff., para. 32, Long in-car video at 28:12). Ms. Carswell and Ms. Martin refused the offer. (*Id.*).

## STATEMENT OF ADDITIONAL FACTS

I.  **LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS**

In support of the defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment, the defendants incorporate herein, in its entirety, the defendants' Local Rule 56.1 Statement of Undisputed Material Facts designated in support of the defendants' Motion for Summary Judgment. (Doc 27).

II. **FORT WAYNE POLICE DEPARTMENT MOTOR VEHICLE TOW AND INVENTORY POLICY**

The Fort Wayne Police Department Motor Vehicle Tow and Inventory Policy, which is attached to the Defendants' Motion for Summary Judgment as Exhibit "G" (Doc 26-7; Plaintiff's Exhibit A), provides:

> II.  Policy:
>
> It is the policy of this department to tow, inventory and impound motor vehicles whenever it is reasonably necessary to safeguard the vehicle and its contents, to facilitate public safety or to lawfully seize the vehicle and its contents for evidentiary purposes.
>
> II.  Procedures:
>
> A. <u>Legal Authority to Inventory Motor Vehicles</u>
>
> 1. A sworn member of the Fort Wayne Police Department shall conduct a motor vehicle inventory without a warrant and probable cause when;
>
>> a. The vehicle has been lawfully seized or impounded pursuant to the arrest of the driver.
>>
>> b. The vehicle is impounded for violations.
>>
>> c. For other related enforcement or safety reasons as defined by Indiana State Law.
>>
>> d. The vehicle posed a threat to the community or was itself imperiled.

### III. OFFICER DERRICK DEMOREST'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Officer Derrick Demorest's Answers to Plaintiff's First Set of Interrogatories, which are attached to the Defendants' Response and Designation of Evidence in Opposition to Plaintiff's Motion for Summary Judgment as Exhibit "I", provide:

**INTERROGATORY NO. 10:**  Identify any action taken by each Defendant to verify whether the passengers in Plaintiff's vehicle at the time of the June 27, 2014, traffic stop were licensed drivers.

**ANSWER: I did a routine check of each passenger's name to check for warrants, identification, and a valid driver's license.**

**INTERROGATORY NO. 12:**  Identify any and all reasons for the decision that was made by the Defendant(s) to tow Plaintiff's vehicle as a result of the traffic stop that occurred on June 27, 2014. Response should include but not be limited to:

   a. The name and badge number of the officer(s) who made the decision to tow Plaintiff's vehicle;

   b. Any custom, policy, practice, or procedure upon which the officer(s) based his decision to tow the vehicle; and

   c. In each Defendant's individual words, identify the circumstances leading up to and during the time when the decision was made to tow the vehicle that resulted in the decision to tow Plaintiff's vehicle.

**ANSWER:**

   **a. Officer Michael Long, 1859**

   **b. Fort Wayne Police Department Motor Vehicle Tow and Inventory Policy**

    c. I was not involved in the decision to tow the plaintiff's vehicle.

## ARGUMENT

I. **SUMMARY JUDGMENT STANDARD.**

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Evidence must be construed in the light most favorable to the non-moving party, and all legitimate inferences should be drawn in favor the non-moving party. *See Dev v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1453 (7th Cir. 1994).

II. **THE IMPOUNDMENT AND INVENTORY SEARCH OF MARQUAYLE MARTIN'S VEHICLE WAS LAWFUL.**

  A. **MarQuayle Martin's Fourth Amendment rights were not violated.**

An impoundment of a vehicle is allowed when it is part of routine administrative caretaking functions of the police or when it is authorized by statute. *South Dakota v. Opperman*, 428 U.S. 364, 370 (1976).

Inventory searches are a recognized exception to the warrant requirement of the Fourth Amendment. *U.S. v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006). Police officers do not violate the Fourth Amendment when they perform warrantless inventory searches of automobiles in police custody. *U.S. v. Lomeli*, 76 F.3d 146,148 (7th Cir. 1996).

The plaintiff contends that *United States v. Duguay*, 93 F.3d 346 (7th Cir. 1996), prohibits impounding a vehicle when specific conditions arise. However, contrary to the plaintiff's contentions, *Duguay* is distinguishable from the facts here. The *Duguay* holding is limited to those cases where there is no comprehensive tow and impound policy.

5

The *Duguay* Court articulated two reasons for concluding that the police conduct in that case violated the Fourth Amendment. The first reason was that the police department did not have a written policy indicating the circumstances under which a vehicle may be impounded or searched. *Id.* And, during the suppression hearing, the police officers did not testify consistently about the unwritten standard policy regarding impoundment.

Unlike the police department in *Duguay*, the Fort Wayne Police Department has a written Motor Vehicle Tow and Inventory Policy. (Doc 26-7). This policy was in effect on the date of the incident. The Motor Vehicle Tow and Inventory Policy states, "It is the policy of this department to tow, inventory and impound motor vehicles whenever it is reasonably necessary . . . to facilitate public safety. . ." The policy further states:

> A.    <u>Legal Authority to Inventory Motor Vehicles</u>
>
> 1.    A sworn member of the Fort Wayne Police Department shall conduct a motor vehicle inventory without a warrant and probable cause when;
>
>> a.    The vehicle has been lawfully seized or impounded pursuant to the arrest of the driver.
>>
>> b.    The vehicle is impounded for violations.
>>
>> c.    For other related enforcement or safety reasons as defined by Indiana State Law.
>>
>> d.    The vehicle posed a threat to the community or was itself imperiled.

Under the Fort Wayne Police Department policy, Mr. Martin's vehicle was towed and inventoried. Mr. Martin was the driver and his vehicle was impounded and inventoried pursuant to his arrest. Mr. Martin's vehicle posed a threat to the community. Mr. Martin's vehicle was impounded for enforcement and safety reasons as defined by Indiana State Law.

The Supreme Court of Indiana has defined prevention of potential hazards as part of the police caretaking function:

> [I]mpoundment is sometimes warranted by exigencies not cataloged in state statutes. The police are expected not only to enforce the criminal laws but also to aid those in distress, abate hazards, *prevent potential hazards from materializing*, and perform an infinite variety of other tasks calculated to enhance and maintain the safety of communities. The Supreme Court has recognized this multifaceted nature of policing and labeled it the 'community caretaking function.'

*Fair v. State*, 627 N.E.2d 427, 431 (Ind. 1993) (citing *Cady v. Dombrowski*, 413 U.S. 433, 441(1973)) (emphasis added).

Unlike the facts in *United States v. Duguay*, in the present case, the circumstances in which a vehicle should be impounded and inventoried are set forth in the Fort Wayne Police Department Motor Vehicle Tow and Inventory Policy. Officer Long followed standardized criteria and established routine in making the decision to impound and conduct an inventory search of Mr. Martin's vehicle.

In *United States v. Duguay*, because there was no written tow and impound policy, the *Duguay* Court assessed the reasonableness of the decision to tow Duguay's vehicle. The second independent reason the *Duguay* Court found that the police officers' actions violated the Fourth Amendment was that the police did not articulate a constitutionally legitimate reason for impounding the vehicle.

The facts of the *Duguay* case are not at all like the facts in the present case. Unlike MarQuayle Martin, Duguay was a passenger in a vehicle. Duguay's girlfriend drove the vehicle. Duguay's girlfriend parked in a parking lot, locked the car, and activated the car alarm. The couple exited the car and began walking towards the girlfriend's apartment. Marshals recognized Duguay. The marshals approached and stopped Duguay for questioning some distance from the car. Duguay struck a marshal with his elbow while the marshal was performing a pat down.

Duguay was arrested for assault. Duguay told his girlfriend not to surrender the car keys. When the girlfriend would not surrender the car keys, she was arrested for obstruction of justice. An officer reached into her pocket to get the keys. The vehicle was inventoried incident to impoundment and a substantial amount of cocaine was found in the trunk. Duguay was charged with possession with intent to distribute the cocaine found in the car.

      Here, unlike *Duguay*, Mr. Martin was driving the vehicle. Mr. Martin was stopped and arrested for aggressive driving - an offense which directly involved the vehicle Mr. Martin was driving. Mr. Martin and his passengers were still in the vehicle when he was stopped. None of the passengers ever had possession of Mr. Martin's car keys. Because Officer Long was the only officer in the area at the time of the stop, Officer Long was only able to stop one of the vehicles involved in the aggressive driving. Because the other vehicle involved in the aggressive driving was not stopped, the aggressive driving could have resumed if Mr. Martin's vehicle was back on the street.

      Officer Long was concerned that the safety of the public would be jeopardized if Mr. Martin's vehicle was driven from the scene. Officer Long had no way of knowing if the other vehicle was still in the area or if the other aggressive driver would initiate more aggressive driving upon seeing Mr. Martin's vehicle back on the road. Officer Long also had no way of knowing if Mr. Martin's passengers would try to find the other vehicle and pursue it aggressively if they left in Mr. Martin's vehicle. Both Officer Long and Officer Demorest are aware that aggressive driving incidents such as this one often escalate into increasingly dangerous situations, such as shootings. Officer Long used his discretion to impound the vehicle in furtherance of public safety, to prevent a potential hazard from materializing, and because the vehicle was used as part of the crime for which Martin was being arrested – aggressive driving.

*See South Dakota v. Opperman*, 428 U.S. 364, 368 (1976) (automobiles are frequently taken into police custody in the interests of public safety and community caretaking functions).

*Duguay* also looks to Illinois law to determine when impoundment is permissible, stating: "Illinois authorities are illustrative of the constitutionally permissible parameters of the power to impound." *Duguay*, 93 F.3d at 354. Here, the Court should look to Indiana law, which provides:

> To prevail on the question of whether an impoundment was warranted in terms of the community caretaking function of the police, the State must demonstrate that (1) the police officer's belief that the vehicle posed some threat or harm to the community or itself was imperiled was consistent with objective standards of sound policing, and (2) the decision to combat that threat by impounding was in keeping with established departmental routine or regulation.

*Fair v. State,* 627 N.E.2d 427, 433 (Ind. 1993) (internal citations omitted). "The question is not whether there was an absolute need to dispose of the vehicle but whether the decision to do so was reasonable in light of the applicable standard." *Bartruff v. State,* 706 N.E.2d 225, 228 (Ind. Ct. App. 1999).

Under this standard, Officer Long acted reasonably. He believed that Mr. Martin's vehicle posed some threat to the community and his decision to impound the vehicle was in keeping with established departmental routine and regulation. Keeping the vehicle off of the street, regardless of who was driving it, was the best way to prevent further aggressive driving and a potential escalation of the situation with the driver of the other vehicle involved in the incident. As Officer Long was concerned with the safety of everyone involved, he offered Mr. Martin's passengers a ride to a safe place where they could wait for someone to pick them up.

As the *Duguay* Court states, "[t]he touchstone of Fourth Amendment analysis is 'reasonableness.'" *Id*. The undisputed facts in this case, which include Mr. Martin's aggressive driving (which disregarded the safety of the public and his passengers, including his five year-old daughter); the arrest of Mr. Martin and one of his adult passengers; the unknown location of

9

the other vehicle and the circumstances that lead to the other vehicle's involvement in the aggressive driving; and the knowledge and experience of the police officers that aggressive driving situations often escalate into even more dangerous situations support Officer Long's decision to impound and conduct an inventory search of Mr. Martin's vehicle.

Mr. Martin relies solely on *Duguay* to support his contention that his Fourth Amendment rights were violated. The facts in *Duguay* are completely different than the facts of this case. Further, there is controlling United States Supreme Court precedent applicable to this case. In *Colorado v. Bertine,* 479 U.S. 367 (1987), the Supreme Court addressed the question of whether an impoundment and inventory search of a vehicle was unconstitutional because police department policies gave officers discretion as to whether to impound the vehicle or simply lock it in a public parking space. The *Bertine* Court stated that police discretion is not prohibited "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Id.* at 375. The *Bertine* Court expressly held that the reasonableness of a particular impoundment "does not necessarily or invariably turn on the existence of alternative less intrusive means." *Id.* at 374.

The *Bertine* Court concluded that "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure." *Id.* at 374. *Duguay* in no way trumps this controlling United States Supreme Court precedent.

Here, as in *Bertine*, the police were following standardized procedures. There is no evidence that Officer Long, in impounding Mr. Martin's vehicle, acted in bad faith or for the sole purpose of investigation. Impounding Mr. Martin's vehicle was lawful and the inventory search

exception applies. The plaintiff's motion for summary judgment should be denied and the defendants' motion for summary judgment should be granted.

### B. MarQuayle Martin's Fourteenth Amendment rights were not violated.

Mr. Martin's Fourteenth Amendment Due Process rights were not violated. The United States Supreme Court has "rejected the proposition that [due process] always requires the State to provide a hearing prior to the initial deprivation of property." *Parratt v. Taylor*, 451 U.S. 527, 540 (1981). The unauthorized deprivation of property by state employees does not violate the due process clause of the Fourteenth Amendment if adequate post-deprivation remedies are available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

A constitutionally adequate remedy to redress property loss caused by a state officer is provided by the existence of the Indiana Tort Claims Act, I.C. 34-13-3. *Hossman v. Spradlin*, 812 F.2d 1019, 1023 (7th Cir. 1987). The impoundment and inventory search of Martin's vehicle did not violate the Fourteenth Amendment. Even if it did, Mr. Martin has adequate post-deprivation remedies.  The plaintiff's motion for summary judgment should be denied and the defendants' motion for summary judgment should be granted.

### C. The defendants may rely on the Fort Wayne Police Department Motor Vehicle Tow and Inventory Policy.

As discussed in Section II (A), the United States Supreme Court decision in *Colorado v. Bertine* controls here. Like the officers in *Bertine*, Officer Long exercised his discretion according to standard criteria and on the basis of more than a suspicion of evidence of criminal activity. Reliance on the Fort Wayne Police Department Motor Vehicle Tow and Inventory Policy is also lawful under *Duguay*. "Standardized criteria or established routine must regulate inventory searches." *Duguay*, 93 F.3d at 351. "Among those criteria which must be standardized are the circumstances in which a car may be impounded." *Id.*

Under United States Supreme Court precedent, an inventory search pursuant to standardized procedures will be upheld unless there is a showing that the government acted in bad faith or searched the vehicle for the sole purpose of investigation. *Colorado v. Bertine*, 479 U.S. 367 (1987); *South Dakota v. Opperman*, 428 U.S. 364, 373 (1976); *Cooper v. California*, 386 U.S. 58, 61-62 (1967). *Duguay* does not contradict this Supreme Court precedent. The *Duguay* Court found the search in that case unreasonable because no standardized criteria or established routine regulated the search. *Duguay*, 93 F.3d at 351.

Here, as laid out above in Section II (A), the Fort Wayne Police Department Motor Vehicle Tow and Inventory Policy sets forth the circumstances in which a vehicle may be impounded and inventoried. The circumstances articulated include the arrest of the driver and valid caretaking functions. Impounding a vehicle and conducting an inventory search under these circumstances are constitutional under *Colorado v. Bertine*. Officer Long acted reasonably in relying on the Fort Wayne Police Department Motor Vehicle Tow and Inventory Policy when making the decision to tow Mr. Martin's vehicle. Therefore, the Court should deny the plaintiff's motion for summary judgment and grant the defendants' motion for summary judgment.

### III.   OFFICER LONG'S AFFIDAVIT IS BASED ON PERSONAL KNOWLEDGE AND IS COMPETENT EVIDENCE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

The plaintiff contends that Officer Long's "reasoning for towing plaintiff's car was created in an attempt to manipulate the defense's position to fit the law." (Plaintiff's brief, p. 12). This contention simply is not true.

Officer Long's affidavit constitutes competent and admissible evidence. Under Federal Rule of Civil Procedure 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence,

and show that the affiant or declarant is competent to testify on the matters stated." "Sworn affidavits, particularly those that are detailed, specific, and based on personal knowledge are 'competent evidence to rebut [a] motion for summary judgment.'" *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006) (quoting *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (per curiam)); *see also Matthews v. Potter*, 316 Fed. Appx. 518, 523 (7th Cir. 2009) ("[A] party may rebut a motion for summary judgment with her own affidavit based on personal knowledge."); *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (personal knowledge may include reasonable inferences grounded in observation or other first-hand personal experience).

Officer Long has personal knowledge of the facts set out in his affidavit. Officer Long's affidavit meets the requirements of Fed. R. Civ. P. 56(c)(4) and the controlling law of the Seventh Circuit. It would be impossible for an officer to write down in his narrative report every single circumstance or moment of a traffic stop. Officer Long is not required to stay within the confines of a routine narrative report when submitting an affidavit supporting a motion for summary judgment. Officer Long is entitled to make statements in his affidavit that are based on his personal knowledge.

The plaintiff also contends that Officer Long's affidavit contradicts Officer Long's statements on the date of the incident. (Plaintiff's brief, p. 13). This simply is not true. In Officer Long's in-car video, when Officer Long stated "Right now, I'm only concerned about the driver," it was in response to a question from Ms. Carswell. (Long in-car video at 20:30). Immediately before Officer Long's statement, Ms. Carswell can be heard saying "So are they going . . ." and then her speech becomes inaudible on the video. *Id.* Officer Long then asks, "Can you tell me what happened?" *Id.* Officer Long was in the middle of questioning Mr. Martin's passengers about the incident when he said "Right now, I'm only concerned about the driver."

13

"Right now" is a very specific point in time. While Officer Long was questioning Mr. Martin's passengers regarding the incident, his main concern was trying to figure out why the driver was driving the way he was. This does not mean that at any other point during the incident he had no concerns about the ramifications of putting Mr. Martin's vehicle back on the road.

The reasonableness of Officer Long's actions has been thoroughly addressed in Section II above. The reasonableness of Officer Long's actions is not relevant to the admissibility of Officer Long's affidavit in support of the defendants' motion for summary judgment. The plaintiff was afforded ample time and opportunity to address statements in Officer Long's affidavit in his response to the defendants' motion for summary judgment. The plaintiff did not do so.

## IV.   THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Governmental actors performing discretionary functions are entitled to qualified immunity and are shielded from liability, unless the plaintiff can show a violation of a constitutional right and, if successful in showing a constitutional violation, demonstrate that the right was clearly established at the time of the alleged violation. *Saucier v. Katz,* 533 U.S. 194, 201–02 (2001). This analysis turns on whether a reasonable officer would have known that his actions were unconstitutional. *Id.* at 202. The purpose of the doctrine is "to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). When confronted with a claim for qualified immunity, a Court must address two questions:  (1) whether the plaintiff's allegations make out a deprivation of a constitutional right; and (2) whether the right was clearly established. *Id.* at 232; *McAllister v. Price,* 615 F.3d 877, 881 (7th Cir. 2010). The Court may address these prongs in whichever

order is best suited to the circumstances of the particular case. *Pearson,* 555 U.S. at 236; *McAllister,* 615 F.3d at 881.

The qualified immunity inquiry acknowledges "that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier,* 533 U.S. at 205. It is the plaintiff's burden to show "the existence of a clearly established constitutional right." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994). "Viewed as a whole, the doctrine of qualified immunity erects a substantial barrier for plaintiffs, and appropriately so because qualified immunity is 'designed to shield from civil immunity all but the plainly incompetent or those who knowingly violate the law.'" *Id*. at 1177 (*quoting Donovan v. City of Milwaukee*, 17 F.3d 944, 952 (7th Cir. 1994)).

The applicability of the qualified immunity doctrine is a question of law. *Hammon v. Kunard*, 148 F.3d 692, 695 (7th Cir. 1998). "Although the privilege of qualified immunity is a defense, the plaintiff carries the burden of defeating it." *Mannoia v. Farrow*, 476 F.3d 453, 457 (7th Cir. 2007).

Under both prongs of the qualified immunity analysis, Officers Pruser, Long, Grooms, Demorest, and Hughes are entitled to qualified immunity. The officers did not violate Martin's constitutional rights. However, assuming a constitutional violation did occur, it would not have been clear to a reasonable officer that Officers Pruser, Long, Grooms, Demorest, or Hughes' conduct violated clearly established law that a reasonable officer would have known.

Qualified immunity is not lost when an officer violates a federal right if a reasonable officer could believe that his specific conduct was permissible. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). In *Anderson*, the United States Supreme Court clarified what is meant by a clearly established constitutional right by stating that the "contours of the right must be

15

sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. at 640.

As discussed above, in light of *Colorado v. Bertine*, a reasonable officer confronted with the same situation as Officers Pruser, Long, Grooms, Demorest, and Hughes would conclude that the officers' inventory search and seizure of Mr. Martin's vehicle did not violate clearly established law. Therefore, Officers Pruser, Long, Grooms, Demorest, and Hughes are entitled to qualified immunity on the federal claims.

## CONCLUSION

For the reasons stated above, the City of Fort Wayne and Fort Wayne Police Officers Barry Pruser, Michael Long, Martin P. Grooms, Derrick Demorest, and Todd Hughes respectfully request that the Court deny the plaintiff's motion for summary judgment and grant the defendants' motion for summary judgment.

Respectfully submitted,

**TRIER LAW OFFICE**


s/Carolyn M. Trier
Carolyn M. Trier, Esq. #15581-02
P.O. Box 5528
Fort Wayne, IN   46895
Telephone:  (260) 485-7000
Fax:  (260) 485-7003
E-mail: carolyntrier@trierlaw.com
ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

      I hereby certify that on the 18th day of August, 2016, a true and correct copy of the foregoing document was served to all counsel of record herein by CM/ECF electronic case filing system as follows:

Christopher C. Myers
David W. Frank
Christopher C. Myers & Associates
809 South Calhoun Street, Suite 400
Fort Wayne, IN 46802


                                                          s/Carolyn M. Trier
                                                          Carolyn M. Trier